[Cite as *In re J. F.*, 2019-Ohio-3172.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| IN RE: | : | |
| J. F. | : | CASE NO. CA2019-01-004 |
| | : | O P I N I O N<br>8/7/2019 |
| | : | |
| | : | |
| | : | |


APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2017-0092


Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

The Search Law Firm, Lorraine M. Search, 6 South Second Street, Suite 309, Hamilton, Ohio 45011, for appellant


**HENDRICKSON, P.J.**

{¶ 1} Father appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, which granted Butler County Children Services permanent custody of Father's biological child, J.F. For the reasons discussed below, this court affirms the award of permanent custody.

{¶ 2} On March 7, 2017, Butler County Children Services ("BCCS" or "the agency")

filed a complaint alleging that J.F was a dependent child. The agency alleged that J.F.'s mother was depressed, homicidal, suicidal, hearing voices, and abusing substances. The complaint further alleged that J.F.'s father was incarcerated at the Mansfield Correctional Institution. BCCS requested temporary custody of J.F., which the court granted on the same day in an emergency ex parte order.

{¶ 3} In April 2017, the juvenile court held a hearing, at which Mother appeared. Father, who was still incarcerated, did not appear. Mother stipulated to J.F.'s dependency and the court found J.F. dependent. The court continued temporary custody with the agency.

{¶ 4} Over the course of the ensuing year, Mother continued to struggle with the issues that caused J.F.'s removal. The court held several review hearings at which it was determined that it was in J.F.'s best interest to extend temporary custody with BCCS. Finally, on July 30, 2018, BCCS moved for permanent custody of J.F. The court subsequently appointed counsel to represent Father in the permanent custody proceedings.

{¶ 5} The court scheduled the permanent custody hearing for November 5, 2018, with a pretrial hearing set for October 22, 2018. On October 19, the agency filed a notice of intent to use evidence at the hearing. This evidence consisted of six documents, including social summaries, substance abuse and mental illness assessments, home studies, and an Ohio Department of Corrections website printout reflecting details concerning Father's incarceration.

{¶ 6} At the October 22, 2018 pretrial, Father's counsel indicated that there was the possibility that Father might be released from prison as early as April 2019 and therefore asked the court to continue the permanent custody hearing. The court indicated it would not continue the case as the child had been in the agency's temporary custody for 589 days.

{¶ 7} On October 31, 2018, Father moved for a continuance of the permanent custody hearing, reiterating the same arguments concerning a potential early release from

prison. Father further indicated he was willing to engage in case plan services in order to reunify with J.F. Simultaneously, Father moved the court to order him transported to the Butler County Juvenile Court for the hearing. The court denied both motions in an entry issued on November 1, 2018.

{¶ 8} The juvenile court held the permanent custody hearing as scheduled on November 5, 2018. Mother was present. Father was not present but was represented by counsel. Father's counsel indicated that Father wished to oppose the permanent custody motion but could not appear personally because of his incarceration. Father's counsel reiterated Father's requests to continue the hearing and to be transported to the hearing. The court again denied these requests.

{¶ 9} Mother then surrendered her custodial rights. Next, the guardian recommended that the court grant permanent custody of J.F. to the agency. Afterwards, the agency offered to submit the documents it had referred to in the earlier filed notice of intent to use evidence. No objection was made by any party to this procedure or to potential hearsay in the documents. The court admitted those documents pursuant to its local rule. No contested hearing was held, and no witnesses testified. Again, no objections were made to this procedure.

{¶ 10} On the same day of the hearing, the magistrate issued a decision recommending that the juvenile court grant permanent custody to BCCS. The decision indicated that Father had failed to appear for the hearing and was found in default. The decision referred to the documents submitted by the agency and adopted the facts in those documents as supporting the finding that an award of permanent custody to the agency was in J.F.'s best interest.

{¶ 11} The court adopted the magistrate's decision later that day. Thirty days later, on December 5, 2018, Father filed objections to the magistrate's decision as well as a motion to

extend the time to file objections. The court denied both motions on the basis that the time for filing objections to the magistrate's decision had passed. Father appeals, raising one assignment of error.

{¶ 12} Assignment of Error No. 1:

{¶ 13} TRIAL COURT ERRED IT GRANTED PERMANENT CUSTODY OF APPELLANT'S CHILD TO [BCCS], THEREBY DENYING APPELLANT HIS RIGHT TO DUE PROCESS IN VIOLATION OF THE UNITED STATES AND THE OHIO CONSTITUTIONS.

{¶ 14} Father argues that the court erred in denying his request to be transported from prison to the hearing, for finding him in default, and for finding that an award of permanent custody to the agency was in J.F.'s best interest. However, Father failed to file objections to the magistrate's decision within the 14-day time-limit prescribed by Civ.R. 53(D)(3)(b)(i). This time limitation is the same regardless of whether the trial court adopts the decision within those 14 days. Civ.R. 53(D)(3)(b)(i). As such, Father is limited to arguing that plain error occurred in the proceedings below. Civ.R. 53(D)(3)(b)(iv). Plain error is only found in "exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

{¶ 15} With respect to the denial of Father's motion to be transported to the hearing from prison, parents have a fundamental liberty interest in the care, custody and management of their children. *Santosky v. Kramer*, 455 U.S. 745, 753,102 S.Ct. 1388 (1982). As such, when the state seeks to terminate custody, a parent is entitled to due process of law – i.e., fundamentally fair procedures -- in accordance with the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution. *In re Elliott*, 4th Dist. Lawrence No. 92 CA 34, 1993 Ohio App. LEXIS 3267,

*10-11 (June 25, 1993).

{¶ 16} Included in such due process rights granted to Father are notice of the hearing, assistance of counsel, and presence at the hearing itself. However, Ohio courts have determined that the right of access to the court is not absolute. *In re Vandale*, 4th Dist. Washington No. 92 CA31, 1993 Ohio App. LEXIS 3465 (June 29, 1993). In *Vandale*, the court held that other procedural protections, such as representation by counsel, may be sufficient to ensure that a parent's due process rights are preserved. *Id.* at *14-15.

{¶ 17} In addition, the United States Supreme Court has set forth a balancing test to be used to determine a parent's due process rights. The three factors to be considered are: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and (3) the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893 (1976).

{¶ 18} Upon consideration of the *Mathews* factors, this court does not find that the record contains evidence establishing plain error, i.e., that the court's decision to deny Father's request to transport him from prison to the hearing had any effect on the outcome of the proceedings. The evidence before the court was that Father had been incarcerated for a robbery offense the entirety of the time J.F. was in the agency's temporary custody. The evidence further suggested that Father would remain incarcerated through the two-year sunset provision on the juvenile court's ability to continue temporary custody with the agency.[1] There was no evidence that Father could have received custody immediately upon release from prison. Mother surrendered custody of the child and there were no family

---

[1] *See* R.C. 2151.353(G); R.C. 2151.415(D)(4).

members or other suitable persons who had expressed interest in receiving custody. Father had not engaged in case plan services and had only expressed an interest in reunification after the permanent custody motion was filed. As such, Father cannot demonstrate a changed outcome but for his presence at the hearing and therefore has not demonstrated plain error.

{¶ 19} Next, Father argues that the court erred in finding him in default. Father argues that grounds for a default judgment did not exist as the agency had not moved for default judgment and that, through counsel, he participated in the proceedings. The Ohio Rules of Juvenile Procedure do not provide a mechanism for default judgment. The procedures set forth for default judgment under Civ.R. 55(A) seem to have limited if any applicability to dependency cases where the relevant statutes adequately address parents who have abandoned their children or who have not participated in the proceedings. Father is correct that the court should not have found him in "default," insofar as that language could reflect a judgment rendered under Civ.R. 55(A).

{¶ 20} However, even if the court erred in finding Father in default, Father has not established plain error. There is no evidence that the finding of default caused any prejudice or affected the outcome of the proceedings. The court considered the evidence before it relevant to J.F.'s best interest. With respect to Father, it was his incarceration and inability to reunify with J.F. within a reasonable time, rather than his alleged default, that led to the court's decision to award permanent custody to the agency.

{¶ 21} Finally, Father argues that the court's decision that a grant of permanent custody to the agency was in J.F.'s best interest was supported by insufficient evidence and was otherwise against the manifest weight of the evidence. Before a natural parent's constitutionally protected liberty interest in the care and custody of his child may be terminated, the state is required to prove, by clear and convincing evidence, that the statutory

standards for permanent custody have been met. *Santosky*, 455 U.S. at 769; R.C. 2151.414(B)(1). An appellate court's review of a juvenile court's decision granting permanent custody is ordinarily limited to whether sufficient credible evidence exists to support the juvenile court's determination. *In re J.H.*, 12th Dist. Clinton Nos. CA2015-07-014 and CA2015-07-015, 2016-Ohio-640, ¶ 21. However, as discussed above, due to Father's failure to timely object, this court's review is limited to a review for plain error.

{¶ 22} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if the court makes findings pursuant to a two-part test. First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D)(1). Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e). Only one of those findings must be met to satisfy the second prong of the permanent custody test. *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 22.

{¶ 23} Father does not challenge the juvenile court's finding that J.F. was in the agency's temporary custody for at least 12 months of a consecutive 22-month period. Accordingly, this court will review whether the court committed plain error in determining that a grant of permanent custody to the agency was in J.F.'s best interest.

{¶ 24} With respect to the best interest analysis, the magistrate indicated he considered all of the evidence previously submitted during the dependency case and at the

permanent custody hearing. The magistrate also considered the fact of Mother's surrender of custody and the guardian ad litem's recommendation. Based on this evidence, the magistrate recommended that the juvenile court award permanent custody to the agency. The magistrate did not make specific findings of fact relative to the statutory best interest factors but indicated he would do so if objections to the magistrate's decision were filed, of which none were.

{¶ 25} Upon review, this court does not find plain error in the juvenile court's determination that a grant of permanent custody to the agency was in J.F.'s best interest. The evidence submitted at the hearing indicated that J.F. had been in the agency's temporary custody for over 600 days by the time of the permanent custody hearing in November 2018. Mother voluntarily surrendered her custodial rights. Father was incarcerated for a robbery offense with a scheduled release date of nearly a year later. There was some uncorroborated suggestion at the hearing that Father could be released as early as April 2019. However, the two-year statutory limitation on extension of temporary custody with the agency would have expired in March 2019.

{¶ 26} Moreover, there was no evidence that Father could or was prepared to receive custody. Father did not engage in any case plan services for reunification and there was no evidence that Father would have been capable of reunification in a reasonable amount of time. No family members or other suitable individuals expressed a willingness to accept custody of J.F. J.F. was in a foster home and the GAL reported that the foster mother wished to adopt her if the agency was granted permanent custody. Based on the foregoing, Father has failed to demonstrate plain error in the juvenile court's decision. This court overrules Father's assignment of error.

{¶ 27} Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.