[Cite as *In re K.M.*, 2020-Ohio-3602.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN RE: | : | |
| K.M., et al. | : | CASE NOS. CA2020-03-031 |
| | | CA2020-03-032 |
| | : | CA2020-03-033 |
| | : | O P I N I O N |
| | | 7/6/2020 |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2018-0210, JN2018-0211, and JN2018-0212

Michael T. Gmoser, Butler County Prosecuting Attorney, John C. Heinkel, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Jeannine C. Barbeau, P.O. Box 42324, Cincinnati, Ohio 45242, for appellant

Legal Aid Society of Southwest Ohio, LLC, Jonathan W. Ford, 10 Journal Square, 3rd Floor, Hamilton, Ohio 45011, guardian ad litem

Guinigundo Law, LLC, Billy Guinigundo, 5331 South Gilmore Street, Fairfield, Ohio 45014, for father

**PIPER, J.**

{¶1} M.M. ("Mother") appeals a decision of the Butler County Court of Common

Pleas, Juvenile Division, granting permanent custody of her three children to the Butler

County Department of Job and Family Services ("the Agency").[1]

{¶2} When Mother's children were seven, five, and seven months old, the Middletown Police Department removed them from Mother's care after finding Mother and Father in possession of drugs while the children were in the home. The police found Father unconscious and unresponsive, slumped over the kitchen table, with Xanax and methamphetamine in his possession. The police located Mother upstairs, attempting to hide a syringe used for heroin consumption. One of the children stated that she had observed Father using needles and had been stuck by a needle that Father left on the bed. The home was also littered with garbage and the police observed cockroaches and bed bugs.

{¶3} The Agency filed complaints alleging that the children were abused and dependent and the children were placed in the emergency temporary custody of the Agency. Neither Mother nor Father appeared for the adjudicatory hearing, and the trial court found the children abused and dependent. Neither Mother nor Father appeared for the dispositional hearing that occurred a month later, and the children were placed in the Agency's temporary custody.

{¶4} At a later review hearing, where neither parent appeared, the court was advised that both parents had tested positive for multiple drugs including methamphetamine, opiates, and cocaine. Mother was also subject to an arrest warrant for her failure to comply with drug treatment ordered by a criminal court.

{¶5} At a later review hearing, again during which neither parent appeared, Mother's attorney advised the court that Mother had not been in contact regarding the case.

---

1. The children's father ("Father") did not file a notice of appeal and has been uninvolved in this appeal.

The children's guardian ad litem ("GAL") advised the court that Mother had not availed herself of the services made available to her and that she had been discharged from drug court. The GAL further reported that the children were doing well in foster care.

{¶6} Mother, while incarcerated on contempt citations, appeared at a review hearing held by the juvenile court. During that hearing, the magistrate explained the seriousness of the situation to Mother, including the need for her to comply with treatment requirements and case plan services. The court scheduled the next hearing with Mother's full knowledge. However, Mother once again failed to appear at the hearing, and her attorney reported Mother's lack of contact once more. The children's GAL reported that the children continued to do very well in foster care and that Mother had not made any progress on her case plan.

{¶7} The Agency eventually moved for permanent custody of the children and Mother received notice of the hearing. Mother did not appear at the permanent custody hearing. Mother's attorney reported attempts to contact Mother, but had no information as to why Mother was not present at the hearing. The magistrate stated that given the parents' failure to appear, they would be found in "default." However, the magistrate issued a lengthy decision analyzing the statutory requirements and evidence rather than rendering judgment because of either parent's "default."

{¶8} The magistrate found in favor of the Agency, and Mother did not file any objections to the magistrate's decision. The trial court adopted the magistrate's decision and granted permanent custody of the children to the Agency.

{¶9} Mother filed a motion to set aside default judgment, claiming that she did not appear at the last hearing because she had a flat tire. The trial court denied Mother's motion. Mother now appeals the trial court's decision, raising the following assignments of

error.

{¶10} Assignment of Error No. 1:

{¶11} THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT MOTHER IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION SIXTEEN OF THE OHIO CONSTITUTION WHEN IT FOUND HER IN DEFAULT, GRANTED BCDJFS' MOTION FOR PERMANENT CUSTODY AND DENIED HER MOTION TO SET ASIDE THE MAGISTRATE'S ORDER AND SET THE MATTER FOR FURTHER PROCEEDINGS.

{¶12} Mother argues in her first assignment of error that she was denied due process by the trial court's denial of her motion to set aside the magistrate's decision.

{¶13} The record indicates that during the permanent custody hearing, neither parent appeared, and the state asked that Mother and Father be found in "default." The magistrate then noted, "as both mother and father have failed to appear today * * * they will be found in default with respect to the motion." However, the magistrate immediately then stated, "I'll take this matter under advisement * * * issue a decision when I get a chance to do that." The magistrate then issued separate written decisions, one for each child, with specific findings and conclusions analyzing the relevant statutory factors. The opinions, approximately 11 pages in length, detailed the evidence and facts accumulated throughout the pendency of the proceedings and addressed the law fully. Thus, the magistrate's decision demonstrates the matter was resolved on the merits, not Mother's absence from the permanent custody hearing.

{¶14} Mother relies on *In re C.M.*, 12th Dist. Butler No. CA2014-10-204, 2015-Ohio-1702, to support her claim that a juvenile court errs in granting default judgment in a

- 4 -

permanent custody matter. However, the juvenile court in *In re C.M.* granted permanent custody at a review hearing during which the parent was absent and had not been provided notice that permanent custody would be addressed. Here, and unlike *In re C.M.*, Mother received notice that the specific hearing was set to consider permanent custody, and Mother chose to be absent from the hearing.

{¶15} Moreover, and as noted above, there is no indication in the record that the magistrate's decision, whether or not Mother attended the hearing, was based on Mother's lack of involvement or absence from the permanent custody hearing. At no time did the magistrate predicate its findings or conclusions on Mother's "default." Thus, it is clear from the record that the magistrate did not render a default judgment, and the trial court's independent review of the matter did not adopt a default judgment.

{¶16} As no default judgment was rendered, the trial court did not err in denying Mother's motion asking that a default judgment be set aside. Nor were Mother's due process rights violated by anything that occurred throughout the pendency of the proceedings. Mother chose not to attend the many review hearings and the permanent custody hearing despite the fact that she had notice of their scheduling and had the chance to be heard at each hearing.

{¶17} To explain her absence from the permanent custody hearing, Mother claimed she had a flat tire and could not inform the court or her attorney of her predicament because she did not have a telephone. However, Mother's explanation, even if true, is discounted given that she appeared for only two hearings from the time the original complaints were filed to the permanent custody hearing and she continually failed to communicate with her attorney in the months prior to the hearing dates. Nor did Mother file objections to the magistrate's decision, which could have been done without physically appearing in court or

despite momentary transportation issues.

{¶18} Mother took no initiative to be involved in the proceedings, despite knowing that the Agency was moving for permanent custody of the children. Thus, Mother's due process rights were not violated, and her first assignment of error is overruled.

{¶19} Assignment of Error No. 2:

{¶20} THE TRIAL COURT'S DECISION AND ORDER GRANTING PERMANENT CUSTODY OF [THE CHILDREN] TO BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS CONTRARY TO THE BEST INTERESTS OF THE CHILDREN.

{¶21} Mother argues in her second assignment of error that the trial court erred in granting permanent custody of the children to the Agency.

{¶22} As noted above, Mother failed to object to the magistrate's decision as required by Juv.R. 40(D)(3)(b). Thus, Mother's challenge is limited to plain error. Juv.R. 40(D)(3)(b)(iv). Plain error is only found in exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *In re J. F.*, 12th Dist. Butler No. CA2019-01-004, 2019-Ohio-3172, ¶ 14.

{¶23} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *In re K.W.*, 12th Dist. Butler No. CA2015-06-124, 2015-Ohio-4315, ¶ 11. The clear and convincing standard of proof requires such evidence that will "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re*

*T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 18.

{¶24} On review, an appellate court is "generally limited to considering whether sufficient credible evidence exists to support the juvenile court's determination." *In re A.S.*, 12th Dist. Butler Nos. CA2019-05-071 thru CA2019-05-073, 2019-Ohio-4127, ¶ 19. Therefore, this court will reverse the juvenile court's decision to grant permanent custody only if there is a sufficient conflict in the evidence presented. *In re W.J.T.*, 12th Dist. Butler No. CA2019-03-047, 2019-Ohio-3051, ¶ 22.

{¶25} Nevertheless, an appellate court may conclude that the judgment is against the manifest weight of the evidence. *In re A.S.* at ¶ 19. To determine whether the judgment was against the manifest weight of the evidence, an appellate court weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *In re M.A.*, 12th Dist. Butler No. CA2019-08-129, 2019-Ohio-5367, ¶ 14.

{¶26} In weighing the evidence, there is a presumption in favor of the findings made by the finder of fact and evidence susceptible to more than one construction will be construed to sustain the verdict and judgment. *In re C.Y.*, 12th Dist. Butler Nos. CA2014-11-231, CA2014-11-236, CA2014-11-237, and CA2014-11-238, 2015-Ohio-1343, ¶ 25.

{¶27} Pursuant to R.C. 2151.414(B)(1), a juvenile court may terminate parental rights and award permanent custody of a child to a children services agency pursuant to a two-part test. *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors included in R.C. 2151.414(D). *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. Second, pursuant to R.C.

2151.414(B)(1)(a) to (e), the juvenile court must find that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.

Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test. *In re A.W.*, 12th Dist. Fayette No. CA2014-03-005, 2014-Ohio-3188, ¶ 12.

{¶28} When examining whether a grant of permanent custody is in a child's best interest, a juvenile court is required to consider all relevant factors, including, but not limited

to, the following:

>(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
>(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
>(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
>(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
>(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶29} After reviewing the record, we find the trial court's determinations were supported by clear and convincing evidence. Regarding the first best interest factor enumerated above, the interaction and interrelationship of the child with others, the trial court considered evidence that Mother had no consistent contact with the children for several months once they were taken into the Agency's custody and that the children were not bonded to Mother. Instead, the children were bonded to each other and to the foster family with whom they were placed. The foster family provided for the children's needs and expressed a desire to adopt all three children.

{¶30} Regarding the wishes of the children, the trial court did not conduct an in camera interview. However, the trial court considered the children's wishes as they were expressed to the GAL. According to the GAL's report, the oldest child has expressed "on

- 9 -

many occasions" a desire to be adopted by the foster family, and expressed some frustration that the process was taking so long. The middle child also expressed a desire to be adopted by the foster family, while the youngest child was not old enough to express any wishes.

{¶31} Regarding the custodial history of the children, the trial court considered that the Agency had custody of the children for 18 months by the time the hearing occurred. During this time, Mother failed to visit with the children on a consistent basis. She appeared late for some visits, was a "no-call/no-show" other times, and failed to confirm her visits in advance. Mother's visitation was thus suspended. During a meeting to discuss possible reinstatement of visitation, Mother was observed "nodding off" and tested positive for methamphetamine, cocaine, morphine, fentanyl, and opiates.

{¶32} Regarding the children's need for permanent placement after 18 months in foster care, the trial court considered that Mother was not making strides to reunify with the children. Mother failed to participate in the case plan services recommended by the Agency, and she admitted to using, and tested positive for, drugs including methamphetamine, fentanyl, cocaine, heroin, and opiates. Mother was given multiple opportunities to participate in treatment for her drug addictions, but failed to participate or make use of any other services offered by the Agency.

{¶33} When the children were placed in foster care, they had heath concerns that have since been attended to by their foster family. One child requires weekly speech therapy and occupational therapy to address fine motor skills, sensory regulation, and coordination. The child was also diagnosed with ADHD and prescribed medication. Another child requires ongoing occupational therapy to address feeding issues. The child was also diagnosed with PTSD and attends therapy to combat the symptoms.

{¶34} Since their time with the foster family, the children are doing well and are "comfortable" in their foster home. The older children are doing well in school and continue to receive services there. After consistent and ongoing meetings with the children and foster family, as well as considering the children's progress at school and with health concerns, the GAL recommended that the juvenile court grant the Agency permanent custody of the children. A balancing of these best interest factors clearly demonstrate that the children's best interests are served by the grant of permanent custody.

{¶35} Regarding the required finding of R.C. 2151.414(B)(1), the trial court determined, and the record clearly demonstrates, that the children had been in the custody of the Agency for 13 consecutive months before it filed for permanent custody, thus fulfilling the 12 of 22-month requirement stated in R.C. 2151.414(B)(1)(d).

{¶36} Thus, after a full review of the record, we find that the trial court's grant of permanent custody was supported by clear and convincing evidence, was not rendered against the manifest weight of the evidence, and did not amount to plain error. Mother's second assignment of error is, therefore, overruled.

{¶37} Judgement affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.