[Cite as *In re A.V.*, 2025-Ohio-970.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE A.V. | : | |
| | : | No. 114379 |
| Minor Child | : | |
| | : | |
| [Appeal by Father] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 20, 2025

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-22-902627

*Appearances:*

Gregory T. Stralka, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} In this companion appeal,[1] appellant-father ("Father") appeals the juvenile court's denial of his motion to continue a permanent-custody hearing concerning his son, A.V.[2] Upon review, we affirm the juvenile court's decision.

## I.    Facts and Procedural History

{¶ 2} The Cuyahoga County Division of Children and Family Services ("CCDCFS") filed a complaint for abuse, dependency, and temporary custody of A.V. in March 2022 along with a motion for predispositional temporary custody. The complaint alleged that Father failed to support, visit, or communicate with A.V. for the majority of his life and that Father was currently in a halfway house and unable to provide care for A.V. Predispositional emergency temporary custody was granted and continued until July 2022, when A.V. was adjudicated dependent and committed to the temporary custody of CCDCFS. In February 2023, CCDCFS filed a motion to modify temporary custody to permanent custody. The affidavit attached to the motion alleged the court-approved case plan required that Father cooperate with CCDCFS to develop a relationship with A.V.; Father lives out of-state and was currently on probation; and Father had minimal contact with A.V.

---

[1] In 8th Dist. Cuyahoga No. 114421, Mother appealed the juvenile court's denial of her request for a continuance and permanent-custody determinations in Cuyahoga C.P., Juv. Div., Case Nos. AD-22-902627 and AD-22-902625.

[2] This appeal addresses the parental rights and responsibilities of Father to A.V. only.

**{¶ 3}** In July 2023, Father appeared for the first time at a hearing. The juvenile court explained his legal rights, the court's procedures, and the hearing's possible consequences. Father, through appointed counsel, objected to the motion to modify temporary custody to permanent custody and denied the affidavit's allegations. The matter was continued, and CCDCFS was ordered to facilitate a visit between A.V. and Father. In September 2023, CCDCFS filed a motion to amend its pending motion to modify temporary custody to permanent custody to a motion for extension of temporary custody due to A.V.'s mother's substantial case-plan progress and an ongoing out-of-state home study involving Father. The juvenile court granted the motion and extended temporary custody until March 2024, to which A.V.'s parents consented.

**{¶ 4}** In February 2024, CCDCFS filed a motion to modify temporary custody to permanent custody. The affidavit attached to the motion alleged that pursuant to the court-approved case plan, Father was to establish a consistent relationship with A.V. and establish and maintain stable housing. However, Father failed to consistently support, visit, or communicate with A.V. for over 90 days and his whereabouts were currently unknown. After numerous continuances, an evidentiary hearing was set for August 2024 by agreement of the parties.

**{¶ 5}** On the day of the hearing, Father's counsel orally moved to continue the matter, explaining that Father was incarcerated and unavailable. Father's counsel stated:

> I would also ask the Court to continue this matter. I believe as the Court is aware my client is currently incarcerated in the State of Connecticut. I have had conversation with him. He has expressed to me that he wants to be present for any future proceedings, including this one. He obviously would — that would occur via Zoom or Microsoft teams.
>
> Unfortunately, I know the Court did reach out to the institution that he's housed at, which is Corrigan-Radgowski Correctional Facility in Connecticut. And they did not have availability for my client to participate this morning. I would just ask that this matter be continued so that he can have an opportunity to participate and so that his voice can be heard relative to this matter.

(Tr. 7.) CCDCFS objected to the motion, arguing that Father's attorney was present and A.V. had been in its custody for "well over two years." *Id.* at 9. The juvenile court noted that A.V. was placed in emergency custody in March 2022 and Father made his first appearance in July 2023. Father's counsel indicated that his contact with Father was limited, and he learned from CCDCFS in July 2024 that Father was incarcerated in a pending matter since May 2024. CCDCFS advised that a worker spoke to a "quite irate" Father while he was in prison. *Id.* at 13. CCDCFS argued that "[Father] knew full well that his child was in custody of [CCDCFS] and could have at any time reached out. We didn't know where he was for quite some time." *Id.* at 14.

{¶ 6} Before rendering its decision, the juvenile court cited caselaw and noted certain factors to consider when ruling on a motion for continuance. The juvenile court found that the case was filed "well over two years ago," CCDCFS filed its motion for permanent custody "approximately 185 days" prior, and continuing the matter would not be in A.V.'s best interests. *Id.* at 17-18. The trial court then denied

Father's request for continuance and proceeded to hold an evidentiary hearing on CCDCFS's motion to modify temporary custody to permanent custody.

{¶ 7} Following the hearing, the juvenile court issued a journal entry with findings of fact and conclusions of law. Therein, the juvenile court found that A.V. had been in CCDCFS's custody since March 2022 and lived with the same caregiver for over two years. The juvenile court noted that A.V. had a strong bond with the caregiver and his siblings, who were also living in the caregiver's home. The juvenile court further found that A.V.'s guardian ad litem recommended permanent custody and Father, who was currently incarcerated for an unknown time, had abandoned and failed to build a relationship with A.V. Ultimately, the juvenile court found by clear and convincing evidence that permanent custody was in A.V.'s best interest, granted CCDCFS's motion, committed A.V. to CCDCFS's permanent custody, and terminated A.V.'s mother and Father's parental rights.

{¶ 8} Father appeals the juvenile court's decision, raising a single assignment of error for review.

### Assignment of Error

The trial court's denial of [Father's] request for a continuance was a violation of his substantive due process rights when the trial court knew the reason for his absence.

## II. Law and Analysis

{¶ 9} In his sole assignment of error, Father argues that his absence was not due to any fault of his or his counsel. Rather, the institution where he was incarcerated did not permit his electronic participation or establish a video

connection for him to attend.  Father claims that the juvenile court abused its discretion when it denied his motion to continue, resulting in a violation of his constitutionally protected right to substantive due process that was prejudicial per se.

{¶ 10} The decision to grant or deny a motion for continuance rests in the broad and sound discretion of the trial court.  *In re C.W.*, 2020-Ohio-3189, ¶ 15 (8th Dist.), citing *State v. Unger*, 67 Ohio St.2d 65, 67 (1981).  An appellate court cannot reverse the trial court's ruling on a motion for continuance absent an abuse of that discretion.  *In re S.B.* 2014-Ohio-4839 (8th Dist.), citing *Cleveland v. Washington*, 2013-Ohio-367 (8th Dist.), citing *Unger*.  An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable.  *In re C.W.* at ¶ 15, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).  When applying the abuse-of-discretion standard, an appellate court may not simply substitute its judgment for that of the trial court.  *In re CK*, 2019-Ohio-4167, ¶ 18 (8th Dist.), citing *Vannucci v. Schneider*, 2018-Ohio-1294, ¶ 22 (8th Dist.).

{¶ 11} The Due Process Clauses of the United States and Ohio Constitutions protect the fundamental right to parent one's child and require both notice and the opportunity to be heard.  *Id.* at ¶ 19, citing *In re M.W.*, 2016-Ohio-2948, ¶ 9 (8th Dist.).  However, this court has held that a parent's right to be present at a custody hearing is not absolute, finding: "While courts must ensure that due process is provided in parental termination proceedings, 'a parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and

with the court in order to have standing to argue that due process was not followed in a termination proceeding.'" *Id.* at ¶ 20, citing *id.* at ¶ 10, and quoting *In re Q.G.*, 2007-Ohio-1312, ¶ 12 (8th Dist.).

{¶ 12} We have applied this rule to incarcerated parents and found that they too do not have an absolute right to be present at a permanent-custody hearing. *In re Z.J.*, 2020-Ohio-383, ¶ 10 (8th Dist.), citing *In re J. F.*, 2019-Ohio-3172, ¶ 16 (12th Dist.). So long as the incarcerated parent has alternate means of participating in the parental rights termination hearing, no due-process violation generally occurs. *Id.*, citing *In re S.U.*, 2014-Ohio-5748, ¶ 23 (12th Dist.). Other procedural protections may also be sufficient to ensure that a parent's due-process rights are preserved, including representation by counsel. *Id.* citing *In re J.F.* at ¶ 16.

{¶ 13} When reviewing a trial court's ruling on a motion to continue, "[a]ny potential prejudice to a party denied a continuance is weighed against the trial court's 'right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.'" *In re I.N.*, 2021-Ohio-1406, ¶ 16, quoting *Unger* at 67. There are "no mechanical tests" for deciding when a continuance's denial is so arbitrary that it violates due process; rather, courts must consider the circumstances in every case and the reasons presented to the trial court at the time. *Id.* at ¶ 17, citing *id.* Courts should also consider certain factors when evaluating a motion for continuance, including: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel, and the court; whether the requested delay is for

legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance, which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case. *Id.*, citing *id.* at 67-68. However, courts are not required to give particular weight to any one factor. *In re K.H.*, 2022-Ohio-2588, ¶ 69. Moreover, courts in permanent-custody cases must be mindful of the children's best interests and their need for stability and permanency. *Id.* at ¶ 16.

{¶ 14} Notably, rules and statutes provide further guidance regarding the consideration of continuances and timeframes for disposing of certain matters in juvenile court. For example, Juv.R. 23 provides that "[c]ontinuances shall be granted *only* when imperative to secure fair treatment for the parties." (Emphasis added.) Juv.Loc.R. 35(C) establishes further parameters:

> No case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

Lastly, R.C. 2151.414(A)(2) requires a juvenile court hold a hearing on a public children services agency's motion for permanent custody no later than 120 days after the agency files a motion for permanent custody, though a reasonable continuance may be granted "for good cause shown." The statute further provides that a court must issue and journalize an order disposing of the motion for permanent custody no later than 200 days after the motion's filing. R.C. 2151.414(A)(2).

**{¶ 15}** Our review of the record reveals that this case began in March 2022, when CCDCFS alleged in its complaint for abuse, dependency, and temporary custody that Father failed to support, visit, or communicate with A.V. for most of his life, was in a half-way house, and was unable to provide care for A.V. A.V. was placed in CCDCFS's temporary custody as a result. CCDCFS first moved for permanent custody in February 2023 but amended its motion to seek an extension of temporary custody after A.V.'s mother made substantial case-plan progress and Father became involved in July 2023. In February 2024, CCDCFS filed another motion to modify temporary custody to permanent custody, alleging that Father failed to consistently support, visit, or communicate with A.V. for over 90 days and his whereabouts were unknown. After numerous continuances, an evidentiary hearing was scheduled for August 2024. Despite Father's incarceration in May 2024, Father did not file any notices or motions prior to the hearing.

**{¶ 16}** On the day of the hearing, Father's counsel was present and orally moved for a continuance on the grounds that Father was incarcerated in Connecticut and the facility did not have availability for Father to participate remotely. Father's counsel advised that his contact with Father was limited, and he was informed by CCDCFS in July 2024 that Father had been incarcerated in a pending matter since May 2024. CCDCFS further advised that Father did not reach out or disclose his whereabouts despite knowing A.V. was in its custody and was "quite irate" when spoken to while in prison. While Father's counsel did note that the juvenile court was aware of Father's incarceration and contacted the institution, no evidence was

presented regarding these communications; rather, the record is silent as to the efforts made by Father to inform the juvenile court of his imprisonment, arrange to attend the hearing remotely, or seek a continuance prior to the day of the hearing. These facts do not suggest that Father exhibited cooperation or communicated with counsel and the juvenile court and fail to demonstrate good cause for a continuance.

{¶ 17} Weighing the potential prejudice to Father against the juvenile court's right to control its docket and the public's interest in the prompt and efficient dispatch of justice, we find that the juvenile court did not abuse its discretion in denying Father's motion for continuance. Father did not comply with Juv.Loc.R. 35(C) and did not show that a continuance was "imperative to secure fair treatment for the parties" as required under Juv.R. 23. As previously discussed, this matter commenced in March 2022 and CCDCFS's motion for permanent custody was filed in February 2024. After multiple continuances were granted for various reasons, the matter was well beyond R.C. 2151.414(A)(2)'s 120-day deadline for holding a hearing and approaching the 200-day mandate for journalizing an order. The record reveals that a CCDCFS caseworker; counsel for A.V.'s mother, Father, and CCDCFS; and guardians ad litem for A.V.'s mother and A.V were present at the hearing. Based on the record before us, Father was not seeking to postpone the hearing due to sudden, unexpected unavailability — an understandable reason for seeking a last-minute request for a continuance. Moreover, Father was represented by counsel at the hearing and the record does not indicate when Father would be available to participate remotely or otherwise be released. Finally, we note that A.V.

had been in CCDCFS's temporary custody for over two years at the time of the August 2024 hearing. On these facts, we cannot say that the juvenile court acted unreasonably, arbitrarily, or unconscionably in denying Father's motion.

**{¶ 18}** Accordingly, we hold that the juvenile court did not abuse its discretion in denying Father's motion for continuance or violate his right to due process. Father's single assignment of error is overruled.

**{¶ 19}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

LISA B. FORBES, P.J., and
SEAN C. GALLAGHER, J., CONCUR