[Cite as *In re J.W.*, 2018-Ohio-1781.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | CASE NOS. CA2017-12-183 |
| | | CA2017-12-184 |
| J.W., et al. | : | |
| | | O P I N I O N |
| | : | 5/7/2018 |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. JN2016-0142 and -0145

Michael T. Gmoser, Butler County Prosecuting Attorney, Michael Greer, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Jeannine C. Barbeau, 3268 Jefferson Avenue, Cincinnati, Ohio 45220, for appellant

**M. POWELL, J.**

{¶ 1} Mother, the biological mother of J.W. and K.E., appeals the decisions of the Butler County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of J.W. and K.E. to the Butler County Department of Job and Family Services ("JFS" or "the agency"). For the reasons described below, this court affirms the juvenile court's decisions.

{¶ 2} In April 2016, JFS filed complaints alleging that J.W. and K.E. were neglected, abused, and dependent children and requested temporary custody. The complaints alleged

that J.W.'s and K.E.'s sibling fell off a roof and was injured. When the accident occurred, Mother claimed to have left the children in the care of the children's grandfather, who fled from the home when law enforcement arrived. Police found the home unsafe and unsanitary. Law enforcement charged Mother with child endangering and removed the children from her care.[1] In an ex parte order, the court granted temporary custody of the children to the agency.

{¶ 3} At a November 2016 hearing, Mother stipulated that the children were dependent. The children's biological father lived out of state, did not participate in the proceedings, and was found in default. The juvenile court adjudicated the children dependent. The agency then withdrew the neglect and abuse allegations.

{¶ 4} Over the following year, Mother, a heroin addict, failed to make substantial progress on her case plan for reunification. In June 2017, the agency moved for permanent custody. The motion alleged that the children could not and should not be placed with either of their parents within a reasonable time and that granting the agency permanent custody was in the children's best interest.

{¶ 5} Prior to the hearing, the children's guardian ad litem filed a recommendation that the court grant permanent custody to the agency. The juvenile court held the permanent custody hearing in October 2017. JFS introduced the testimony of Mother's caseworker and several documentary exhibits.

{¶ 6} The caseworker testified that the agency placed the children with a foster family in May 2016, where they remained throughout the pendency of the case. The caseworker detailed Mother's lack of progress on the agency's case plan for reunification, which included her failure to complete any case plan service concerning her issues with

---

1. Mother's three other children who were removed that day are not at issue in this appeal.

substance abuse. Mother repeatedly tested positive for narcotics and, admitting continued heroin use, stopped submitting to drug tests. Mother exercised visitation with her children at a family visitation center and the visits went well. Mother and the children appeared bonded. As of the hearing, Mother was not allowed to visit with the children because she missed some scheduled visitations. However, Mother continued to see the children regularly when the foster family would let her.

{¶ 7} Mother testified in defense of her parental rights. Mother testified that she was sober and had stopped using heroin one year after the children's removal, in April 2017. Mother testified that she obtained a vehicle in September 2017 and housing at the beginning of October 2017. She was not currently involved in counseling but agreed that she needed counseling.

{¶ 8} A magistrate issued a decision recommending that the court grant permanent custody to the agency. The juvenile court adopted the decision the same day. Mother then appealed. Mother raises two assignments of error in this appeal.

{¶ 9} Assignment of Error No. 1:

{¶ 10} THE TRIAL COURT'S DECISION AND ORDER GRANTING PERMANENT CUSTODY OF J.W. AND K.E. TO BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IT WAS CONTRARY TO THE BEST INTEREST OF THE CHILDREN, AND THERE WAS INSUFFICIENT CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE DECISION.

{¶ 11} Mother argues that the decision to grant permanent custody to JFS was not supported by the evidence. Mother contends that she made some progress on her case plan, had employment, obtained a vehicle, and her visits with the children went well and displayed the bond between Mother and child. Because of these facts, Mother argues that

clear and convincing evidence did not support the juvenile court's decision.

{¶ 12} However, Mother did not object to the magistrate's decision.[2]  Juv.R. 40(D)(3)(b)(iv) provides that "a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion" pursuant to the procedure set forth in the juvenile rule.  The rule embodies the principle that the failure to draw the trial court's attention to potential error, where the trial court could have corrected the error, results in a waiver of that argument on appeal.  *In re Morris*, 12th Dist. Butler No. CA2000-01-001, 2000 Ohio App. LEXIS 4799, *3-4 (Oct. 16, 2000).  However, Juv.R. 40(D)(3)(b)(iv) excepts "plain error" from this waiver rule.

{¶ 13} Plain error in the civil context is "extremely rare" and this court must find that the error involves "exceptional circumstances" where the error "rises to the level of challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997).  Consequently, this court will consider whether the juvenile court's decision granting permanent custody of the children to the agency constitutes civil plain error.

{¶ 14} Pursuant to R.C. 2151.414(B)(1), a court may terminate parental rights and award permanent custody to a children services agency if the court makes findings pursuant to a two-part test.  First, the court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D).  Second, the court must find that any of the following apply: (1) the child is abandoned, (2) the child is orphaned, (3) the child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, (4) where the preceding three factors

---

2. As noted, the juvenile court adopted the magistrate's decision on the same day it was filed as permitted by Juv.R. 40(D)(4)(e)(i).  If Mother had thereafter filed objections within the time prescribed under Juv.R. 40, the effect would be an automatic stay of execution of the court's judgment, until the objections are ruled upon. Juv.R. 40(D)(4)(e)(i).

do not apply, the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, or (5) the child or another child in the custody of the parent from whose custody the child has been removed, has been adjudicated an abused, neglected, or dependent child on three separate occasions. R.C. 2151.414(B)(1)(a)-(e). Only one of those findings must be met to satisfy the second prong of the permanent custody test. *In re B.T.H.*, 12th Dist. Butler No. CA2017-06-080, 2017-Ohio-8358, ¶ 35.

{¶ 15} Pursuant to R.C. 2151.414(B)(1)(b), the juvenile court found that the children's biological father abandoned them. Mother does not challenge this finding. Pursuant to R.C. 2151.414(B)(1)(a), the juvenile court also found that the children could not be placed with either parent within a reasonable time or should be placed with their parents. In so finding, the court considered the relevant statutory factors set forth under R.C. 2151.414(E)(1) through (16).

{¶ 16} With respect to R.C. 2151.414(E)(1), i.e., whether Mother failed to substantially remedy the problems that caused the children's removal, the juvenile court found that Mother's case plan for reunification required her to complete a SAMI (substance abuse/mental illness) assessment and follow its recommendations, submit to random drug screens, participate in in-home parenting classes prior to and upon reunification, and obtain and maintain stable housing and employment.

{¶ 17} For several months, Mother did not appear for scheduled SAMI assessments. Mother first completed a SAMI assessment in November 2016. The assessment determined that Mother had severe opioid use disorder and major depressive disorder. The assessment recommended residential treatment. Mother reported for residential treatment in February 2017 but left the facility the next day and never returned.

{¶ 18} In April 2017, Mother completed another SAMI assessment, which resulted in the same diagnoses as before. However, this assessment recommended outpatient treatment, random drug screens, Vivitrol shots, and counseling. Mother then engaged in services through Community Behavioral Health ("CBH") and began outpatient drug abuse treatment. However, by August 2017, Mother was discharged from CBH for non-attendance. As of the permanent custody hearing, Mother had not resumed drug treatment with CBH, although she testified that she planned to do so shortly.

{¶ 19} Mother tested positive for fentanyl in three drugs screens in 2016. Mother tested positive for opiates and fentanyl in a January 2017 drug screen. Mother refused other drug screens because she admitted regular heroin use. However, Mother's drug screens from April 2017 through August 2017 were negative for all drugs tested. Then on September 2017, Mother tested positive for amphetamines, specifically Adipex. Mother testified that this positive result was from taking a weight-loss drug that she was prescribed in 2015. Mother provided no proof of this prescription.

{¶ 20} Mother has lived in five locations since commencement of the case in April 2016. She lived with her father in Hamilton, Ohio, then moved in with family in Camden, Ohio, then with a friend in Richmond, Indiana, and then back to Hamilton, Ohio to a friend's residence. Finally, two weeks prior to the hearing, Mother moved into her own two-bedroom apartment in Hamilton. JFS visited the apartment and found it appropriate. The juvenile court found that the apartment was appropriate, but that Mother had not demonstrated housing stability because of her prior residential history and the brief time she lived in the new apartment.

{¶ 21} As of the hearing, Mother had not engaged in parenting classes because the agency wanted her to demonstrate stable housing before referring her for parenting

classes. Mother had a series of short-term employments throughout the case as well as a three-month term of unemployment. Mother had just recently changed jobs but had not yet received her first paycheck. The court found that Mother had also not demonstrated stable employment.

{¶ 22} Ultimately, the court found that Mother had not completed any of her case plan services and, as of the time of the permanent custody hearing, was not actively engaged in any case plan services. Accordingly, the court found that notwithstanding reasonable case planning and efforts by the agency to assist Mother in remedying the problems that cause the children's removal, Mother had failed continuously and repeatedly to substantially remedy the conditions that caused removal.

{¶ 23} With respect to R.C. 2151.414(E)(2), mental illness and drug dependency, the court reiterated its findings concerning Mother's SAMI assessments, Mother's history of drug abuse, and her failure to complete any case plan services. The court additionally found that in April 2017, Mother self-referred to a hospital for suicidal ideation. Mother received inpatient treatment for four days before being released. Nonetheless, Mother was not currently engaged in mental health services.

{¶ 24} With respect to R.C. 2151.414(E)(4), the court found that Mother demonstrated a lack of commitment to the children by not completing her case plan services and by not maintaining stable housing and income.

{¶ 25} With regard to R.C. 2151.414(E)(7), whether Mother had been convicted of an offense involving harm to a child, the court found that Mother was convicted of two counts of attempted child endangering, which offenses arose from the same incident that resulted in the children's removal.

{¶ 26} After making a finding that grounds for granting permanent custody existed

under R.C. 2151.414(B)(1)(a), the juvenile court went on to consider the statutory best interest factors:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C.2151.414(D)(1).

{¶ 27} With respect to R.C. 2151.414(D)(1)(a), the juvenile court found that Mother's visitations with the children went well and Mother was appropriate with the children. The court additionally found that the children had adjusted well to their foster home, where they had been for nearly 18 months.

{¶ 28} With regard to R.C. 2151.414(D)(1)(b), the court noted that the children's guardian ad litem recommended that permanent custody be granted to the agency.

{¶ 29} Concerning R.C. 2151.414(D)(1)(c), the juvenile court found that the children had not been in the temporary custody of the agency for more than 12 consecutive months.

{¶ 30} With respect to R.C. 2151.414(D)(1)(d), the court found that the children were removed from Mother's care in April 2016 due to lack of supervision in the home and

because of Mother's arrest for child endangering. The children's father was out of state, had a history of issues with children services, and had a no-contact order with the family.

{¶ 31} The agency prepared and filed three case plans. Mother failed to complete any case plan service and was unsuccessfully discharged from various services for lack of attendance. Mother was not engaged in any case plan service as of the time of the permanent custody hearing.

{¶ 32} No other individual approached the agency with a request for a home study and no other persons moved for legal custody.

{¶ 33} The court noted that granting permanent custody to the agency was not the only way to provide the children with a legally secure placement as it was "theoretically" possible that Mother could eventually address her issues with drug abuse, mental health, and housing and employment stability. However, based on her history and current situation, the court found it unlikely that Mother would be able to provide the children with a safe and stable environment in the foreseeable future. Based on the above analysis, the court found by clear and convincing evidence that the placement of the children in the permanent custody of JFS was in the children's best interest.

{¶ 34} This court concludes that the juvenile court considered the relevant statutory criteria and, given our review of the record, made the appropriate findings to grant permanent custody to the agency. This court finds no error that challenges the legitimacy of the judicial process and this is not one of the "exceptionally rare" cases involving civil plain error. The evidence reflects a bond between Mother and the children and that Mother exercised regular visitation with her children. Unfortunately, Mother's actions revealed that she, for too long, prioritized substance abuse over her children. Mother took some steps to finally obtain stable housing, but only weeks before the permanent custody hearing.

Consequently, this court overrules Mother's first assignment of error.

{¶ 35} Assignment of Error No. 2:

{¶ 36} THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE CHILDREN, J.W. AND K.E., TO BUTLER COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES AND IT IS NOT IN THE BEST INTEREST OF THE CHILDREN WHEN THE BIOLOGICAL FAMILY IS BONDED, THE CHILDREN ARE NOT IN AN ADOPTIVE PLACEMENT, AND THEIR WISHES WERE NOT CONSIDERED.

{¶ 37} In her second assignment of error, Mother makes additional arguments concerning the best interests of the children. We reject those argument for the same reasons discussed in response to Mother's first assignment of error. However, Mother also argues that error occurred because the record does not indicate that the guardian ad litem determined the wishes of the children. Mother also argues that the guardian ad litem's recommendation was at odds with the children's wishes, so the court should have appointed the children a separate attorney.

{¶ 38} Again, Mother failed to raise any of these issues with the juvenile court and is limited to a review for civil plain error. With respect to Mother's argument that the guardian ad litem failed by not determining the children's wishes, any error, if it occurred, would be harmless. As of the time of the hearing, the older of the two children was five years old and the younger child was three years old. Thus, both children were too young to express an informed choice as to their custody. Mother's argument that the court should have appointed the children independent counsel relies on the premise that the children wished for the court to grant permanent custody to Mother. However, as was just discussed, the children were too young to express an informed choice on this subject. This court finds nothing rising to the level of plain error. Accordingly, this court overrules Mother's second

assignment of error.

{¶ **39**} Judgment affirmed.

S. POWELL, P.J, and HENDRICKSON, J., concur.