[Cite as *In re A.D.*, 2022-Ohio-736.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

IN RE:                       :

     A.D., et al.             :          CASE NO. CA2021-11-060

                           :          O P I N I O N
                                       3/14/2022

                           :

                           :

                           :

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case Nos. 2019 JC 05200; 2019 JC 05201; and 2021 JC 05409

The Law Office of Wendy R. Calaway, Co., LPA, and Wendy R. Calaway, for appellant.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas A. Horton, Assistant Prosecuting Attorney, for appellee.

**S. POWELL, J.**

{¶ 1} Appellant ("Mother") appeals the decisions of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her three children, A.D., M.D., and T.M.-E., to appellee, Clermont County Department of Job and Family Services ("CCDJFS"). For the reasons outlined below, we affirm the juvenile court's decisions

granting CCDJFS permanent custody of A.D. and M.D., but reverse the juvenile court's decision granting CCDJFS permanent custody of T.M.-E. and remand that matter to the juvenile court for further proceedings consistent with this opinion.

**Facts and Procedural History**

{¶ 2}   This case involves Mother's three children: twin girls, A.D. and M.D., born on February 4, 2008, and the twins' younger half-brother, T.M.-E., born on June 5, 2011.  The children's fathers have not been, and are not now, a part of this case.

{¶ 3}   On August 29, 2019, CCDJFS received a report that T.M.-E. was being physically abused by his maternal uncle ("Uncle") who resided in the home with Mother and T.M.-E.'s two older half-siblings.  During the subsequent investigation into this report, Mother admitted to using methamphetamine.  CCDJFS also discovered that the home where the children were living with Mother and Uncle had previously been through a fire and that the damage to the home had not been repaired.  It was further discovered by CCDJFS that Mother and Uncle had been involved in two prior domestic violence incidents that required police intervention.  Due to these discoveries, a safety plan was put into place by CCDJFS.

{¶ 4}   On October 15, 2019, CCDJFS learned that the conditions set forth in the safety plan had not been followed given that Mother, as well as other non-approved relatives, had been allowed unsupervised access to the three children.  Because of this, CCDJFS filed three complaints with the juvenile court alleging A.D., M.D., and T.M.-E. were neglected children.  CCDJFS filed all three complaints with the juvenile court on October 16, 2019.  The juvenile court gave the case involving A.D. Case No. 2019 JC 05200, the case involving M.D. Case No. 2019 JC 05201, and the case involving T.M.-E. Case No. 2019 JC 05202.

{¶ 5}   Shortly after receiving these three complaints, the juvenile court awarded

emergency temporary custody of A.D., M.D., and T.M.-E. to CCDJFS. Then, on October 31, 2019, the juvenile court adjudicated A.D. and M.D. neglected children. Approximately one month later, on November 21, 2019, the juvenile court held a disposition hearing for A.D. and M.D. Following this hearing, the juvenile court issued a dispositional decision awarding temporary custody of A.D. and M.D. to CCDJFS. Temporary custody of A.D. and M.D. was thereafter extended on September 17, 2020, and again on March 11, 2020. On April 1, 2021, CCDJFS moved for permanent custody of A.D. and M.D.

{¶ 6} On March 17, 2020, the juvenile court adjudicated T.M.-E. a neglected child. Two weeks later, on March 31, 2020, the juvenile court held a disposition hearing, following which the juvenile court awarded temporary custody of T.M.-E. to CCDJFS. Temporary custody of T.M.-E. was thereafter extended on September 17, 2020, and again on March 11, 2020. CCDJFS then moved for permanent custody of T.M.-E. on April 1, 2021. However, upon discovering a scheduling issue had resulted in T.M.-E.'s disposition taking place over 90 days after the original neglect complaint had been filed, the juvenile court dismissed T.M.-E.'s case, i.e., Case No. 2019 JC 05202.

{¶ 7} On May 28, 2021, CCDJFS filed a dependency complaint seeking permanent custody of T.M.-E. as the juvenile court's original dispositional order. The juvenile court assigned this Case No. 2021 JC 5409. To support this new dependency complaint, CCDJFS alleged the following:

> Child has been in the care of Clermont County and placed in foster care since 10/16/2019. His mother has not cared for him since that time. Child is dependent at this time. Mother has ongoing substance use issues, mental health, housing and income concerns. Mother has no stability. The father has not participated in the child's life and has had no contact with him since prior to 10-16-2019. The agency also has temporary custody of his 2 siblings that were placed on 10-16-19 and have remained in Children Services (sic) custody since removal. The agency has filed for permanent custody.

{¶ 8} On July 1, 2021, T.M.-E. was adjudicated a dependent child. The three cases involving A.D., M.D., and T.M.-E. were then consolidated for purposes of disposition on T.M.-E.'s newly filed case, Case No. 2021 JC 5409, with the hearing on CCDJFS' motions for permanent custody in A.D.'s and M.D.'s cases, Case Nos. 2019 JC 05200 and 2019 JC 05201  This combined hearing took place before a juvenile court magistrate on July 23, 2021. During this hearing, the magistrate heard testimony from several witnesses, including the children's guardian ad litem, who recommended CCDJFS receive permanent custody of all three children, as well as testimony from Mother.

{¶ 9} As part of her testimony, Mother testified that she had "just recently" signed a lease and moved into a three bedroom apartment with a childhood friend. Mother also testified that she does "not do no type of treatment" even though she admittedly has a "really bad anxiety problem" and "used drugs throughout [her] life" because "it's mind over matter." Mother further testified, however, that she was "trying to get a marijuana card" to help with her PTSD. Thereafter, when asked whether she believed "today" that she was able provide for A.D., M.D., and T.M.-E., Mother testified:

> Yes, with the help of my dad, because I just started working. But I'm just now learning stability myself. I was never stable, for real, growing up, so I don't know what it is, and I'm just now learning that. And, yeah, I probably need a little bit to learn that, but I want my kids more than anything. Throughout this whole process, I find myself going in and out of depression and battle, but I've had depression since I was 16. I'm not a bad nom but I'm not a great mom.

{¶ 10} On September 30, 2021, the magistrate issued three separate decisions in Case Nos. 2019 JC 05200, 2019 JC 05201, and 2021 JC 05409 recommending the juvenile court grant permanent custody of A.D., M.D., and T.M.-E. to CCDJFS. As part of each of those three decisions, the magistrate found A.D., M.D., and T.M.-E. had all been in the temporary custody of CCDJFS for 12 or more months of a consecutive 22-month period

after being removed from Mother's care on October 16, 2019. The magistrate also found CCDJFS had exercised reasonable efforts to prevent continued removal of all three children from their home. The magistrate further found Mother "ha[d] not been economically stable for the life of the case" and that Mother "was basically homeless for much of the case."

{¶ 11} The magistrate additionally found that, despite Mother "testing positive for amphetamines and methamphetamine several months before trial, she does not believe that she needs drug treatment." This was in addition to the magistrate finding:

> Mother does not dispute that stability would be hard for her. Due to her childhood, she has little experience with it and does not really know what stability looks like. In sum, the case plan elements were designed to help Mother achieve economic and emotional stability. Mother has not achieved those goals.

{¶ 12} Mother did not file an objection to any of the magistrate's three decisions recommending permanent custody to CCDJFS. Because of this, on October 18, 2021, the juvenile court issued three separate decisions in Case Nos. 2019 JC 05200, 2019 JC 05201, and 2021 JC 05409 affirming and adopting the magistrate's recommendations that it grant permanent custody of A.D., M.D., and T.M.-E to CCDJFS. Mother now appeals from those three decisions, raising the following single assignment of error for review.

{¶ 13} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN ADOPTING THE MAGISTRATE'S DECISION PERMANENTLY TERMINATING APPELLANT'S PARENTAL RIGHTS.

{¶ 14} In her single assignment of error, Mother argues the juvenile court erred by affirming and adopting the magistrate's decision recommending permanent custody of A.D., M.D., and T.M.-E. to CCDJFS. To support this claim, Mother argues the evidence presented in this case "does not rise to the level of clear and convincing [evidence] necessary to permanently sever a parent child relationship" when considering she has appropriate housing, sufficient employment, and the necessary "behavioral health support

- 5 -

sufficient to care for her children."

**Mother's Failure to Object to the Magistrate's Decisions**

{¶ 15} "The juvenile rules require written objections to a magistrate's decision." *In re C.D.*, 12th Dist. Clermont No. CA2019-02-014, 2019-Ohio-4911, ¶ 29. In this case, however, Mother did not file any objections to the magistrate's three decisions recommending the granting of permanent custody to CCDJFS. "By failing to object to the magistrate's decision in a case involving termination of parental rights," such as the case here, "an appellant waives the right to assign as error on appeal the trial court's adoption of any finding of fact or conclusion of law." *In re Stephens*, 12th Dist. Butler Nos. CA2001-01-018 and CA2001-01-021, 2001 Ohio App. LEXIS 4451, *4 (Oct. 1, 2001). The Rules of Juvenile Procedure similarly "provides that, except for a claim of plain error, a party waives the right to assign error on appeal with respect to the juvenile court's adoption of any factual finding or legal conclusion 'unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).'" *In re M.R.*, 12th Dist. Butler Nos. CA2018-07-145 thru CA2018-07-147, 2018-Ohio-5047, ¶ 16, quoting Juv.R. 40(D)(3)(b)(iv).

{¶ 16} "This rule 'embodies the long-recognized principle that the failure to draw the trial court's attention to possible error when the error could have been corrected results in a waiver of the issue for purposes of appeal.'" *In re R.A.*, 8th Dist. Cuyahoga No. 110541, 2021-Ohio-4126, ¶ 23, quoting *In re Etter*, 134 Ohio App.3d 484, 492 (1st Dist.1998) ("[t]he waiver under Juv.R. 40[E][3][b] embodies the long-recognized principle that the failure to draw the trial court's attention to possible error, by objection or otherwise, when the error could have been corrected, results in a waiver of the issue for purposes of appeal"). Therefore, because Mother did not, as required by Juv.R. 40(D)(3)(b), file any objections to the magistrate's decisions recommending the juvenile court grant permanent custody of A.D., M.D., and T.M.-E. to CCDJFS, Mother has waived all but plain error on appeal. *See,*

*e.g., In re K.M.*, 12th Dist. Butler Nos CA2020-03-031 thru CA2020-03-033, 2020-Ohio-3602, ¶ 22 (holding that, in a permanent custody case, "Mother's challenge is limited to plain error" where "Mother failed to object to the magistrate's decision as required by Juv.R. 40[D][3][b]"). Accordingly, this court will consider whether any of the juvenile court's three decisions in Case Nos. 2019 JC 05200, 2019 JC 05201, and 2021 JC 05409 granting permanent custody of A.D., M.D., and T.M.-E to CCDJFS constitutes plain error.

**Plain Error Standard of Review**

{¶ 17} "Invocation of the plain error doctrine in civil cases * ** is strictly limited." *In re T.J.*, 12th Dist. Preble No. CA2008-10-019, 2009-Ohio-1844, ¶ 34. This is because neither the plain error doctrine, nor the application of a plain error review, are favored in civil cases. *In re K.R.*, 12th Dist. Clermont No. CA2015-06-049, 2016-Ohio-2775, ¶ 20 ("[t]he plain error doctrine is not favored in civil cases"); *In re S.A.*, 12th Dist. Butler Nos. CA2017-07-092 thru CA2017-07-098, 2017-Ohio-8792, ¶ 43 ("[p]lain error review is not favored in civil cases"). "Plain error in the civil context is 'extremely rare' and this court must find that the error involves 'exceptional circumstances' where the error 'rises to the level of challenging the legitimacy of the underlying judicial process itself.'" *In re J.W.*, 12th Dist. Butler Nos. CA2017-12-183 and CA2017-12-184, 2018-Ohio-1781, ¶ 13, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997); *In re D.M.*, 12th Dist. Preble Nos. CA2017-12-017 and CA2017-12-018, 2018-Ohio-2260, ¶ 16 ("[a]ppellate courts will only recognize plain error in extremely rare cases with exceptional circumstances"). "The doctrine implicates errors that are 'obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings.'" *In re J.M.*, 12th Dist. Butler Nos. CA2018-06-124 and CA2018-06-125, 2019-Ohio-3716, ¶ 14, quoting *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209 (1982).

**The Applicable Permanent Custody Statutes**

{¶ 18} "A public children services agency may seek permanent custody of a child in an abuse, neglect, or dependency proceeding in one of two ways." *In re S.H.*, 12th Dist. Butler Nos. CA2020-02-023 and CA2020-02-024, 2020-Ohio-3499, ¶ 17. "An agency may either (1) obtain temporary custody of the child and then file a motion for permanent custody, or (2) request permanent custody as part of its original abuse, neglect, or dependency complaint." *In re A.A.*, 12th Dist. Clermont No. CA2015-12-098, 2016-Ohio-2992, ¶ 9, citing *In re T.K.K.*, 12th Dist. Butler No. CA2012-01-008, 2012-Ohio-3203, ¶ 22. This appeal presents instances of both; that is, in Case Nos. 2019 JC 05200 and 2019 JC 05201, CCDJFS obtained temporary custody of A.D. and M.D. prior to filing its motions for permanent custody of A.D. and M.D. with the juvenile court on April 1, 2021, whereas in Case No. 2012 JC 05409, CCDJFS requested permanent custody of T.M.-E. as part of its dependency complaint filed with the juvenile court on May 28, 2021.

**R.C. 2151.414(B)(1) Applied to A.D.'s and M.D.'s Cases**

{¶ 19} Because CCDJFS filed its motions for permanent custody of A.D. and M.D. after the juvenile court had already issued an initial disposition, it was R.C. 2151.414(B)(1) that applied to CCDJFS' motions for permanent custody in Case Nos. 2019 JC 05200 and 2019 JC 05201. *See In re T.K.K.*, 2012-Ohio-3203 at ¶ 23, fn.1 (noting that R.C. 2151.414[B][1] "generally applies when an agency files a motion for permanent custody after an initial disposition"). Pursuant to that statute, "the juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test." *In re M.H.*, 12th Dist. Clermont Nos. CA2021-08-050 thru CA2021-08-052, 2022-Ohio-49, ¶ 30, citing *In re G.F.*, 12th Dist. Butler No. CA2013-12-248, 2014-Ohio-2580, ¶ 9.

{¶ 20} In accordance with that two-part test, the juvenile court must first find the grant

of permanent custody to the agency is in the best interest of the child by utilizing the factors set forth in R.C. 2151.414(D)(1). *In re J.M.*, 12th Dist. Butler Nos. CA2021-06-072, CA2021-06-073, CA2021-07-083, and CA2021-07-084, 2021-Ohio-3961, ¶ 50, citing *In re D.K.W.*, 12th Dist. Clinton No. CA2014-02-001, 2014-Ohio-2896, ¶ 21. The juvenile court must then find one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) apply. *In re R.F.*, 12th Dist. Warren Nos. CA2021-06-052, CA2021-06-053, and CA2021-06-056, 2021-Ohio-4118, ¶ 10, citing *In re C.B.*, 12th Dist. Clermont No. CA2015-04-033, 2015-Ohio-3709, ¶ 10. This includes a circumstance, often referred to as the "12 of 22" provision, where the subject child has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period. R.C. 2151.414(B)(1)(d).

### R.C. 2151.353(A)(4) Applies to T.M.-E.'s Case

{¶ 21} Because CCDJFS' dependency complaint requested the juvenile court grant it permanent custody of T.M.-E. as part of its initial disposition, it is R.C. 2151.353(A)(4) that applies to CCDJFS' request for permanent custody in Case No. 2021 JC 05409. *See In re W.R.*, 12th Dist. Fayette No. CA2011-08-016, 2012-Ohio-382, ¶ 30 ("[i]n cases where an agency files a request for permanent custody as part of an initial disposition the court is guided by the standards in R.C. 2151.353[A][4]"). Pursuant to that statute, the juvenile court must satisfy a two-pronged test to grant permanent custody as part of its original disposition. *In re E.P.*, 12th Dist. Fayette Nos. CA2009-11-022 and CA2009-11-023, 2010-Ohio-2761, ¶ 23 ("[i]n order to grant permanent custody as part of its original disposition, a juvenile court must apply a two-prong[ed] test"), citing R.C. 2151.353(A)(4); *In re A.A.*, 2016-Ohio-2992 at ¶ 10.

{¶ 22} In accordance with this two-pronged test, "[t]he juvenile court must: (1) determine that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent by considering the factors in R.C.

- 9 -

2151.414(E); and (2) determine that permanent custody is in the best interest of the child by considering the factors in R.C. 2151.414(D)(1)." *In re S.H.*, 2020-Ohio-3499 at ¶ 18; *In re C.S.,* 12th Dist. Warren No. CA2018-07-080, 2018-Ohio-4786, ¶ 23. "[T]he plain language of the statute only requires a finding of one R.C. 2151.414(E) factor" to satisfy the first-prong of this two-pronged test. *In re S.H.* at ¶ 20. The so-called "12 of 22" provision is not one of the factors set forth in R.C. 2151.414(E). *See* R.C. 2151.414(E)(1) to (16).

**Best Interest of the Children**

{¶ 23} Regardless of whether it is the two-part test set forth under R.C. 2151.414(B)(1) or the two-prong test set forth under R.C. 2151.353(A)(4) that applies, both tests require the juvenile court to determine whether a grant of permanent custody is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D)(1). These factors include, but are not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) thru (11) apply in relation to the parents and child. *In re J.C.*, 12th Dist. Brown No. CA2017-11-015, 2018-Ohio-1687, ¶ 22. "The juvenile court may also consider any other factors it deems relevant to the child's best interest." *In re A.J.*, 12th Dist. Clermont No. CA2018-08-063, 2019-Ohio-593, ¶ 24.

**Analysis**

{¶ 24} After a full and thorough review of the record, we find the juvenile court properly applied the correct two-part test set forth under R.C. 2151.414(B)(1) to CCDJFS'

- 10 -

motions for permanent custody of A.D. and M.D. in Case Nos. 2019 JC 05200 and 2019 JC 05201. In so doing, the juvenile court did not err by finding A.D. and M.D. had been in the temporary custody of CCDJFS for at least 12 months of a consecutive 22-month period, thereby satisfying the second part of that two-part test. The juvenile court also did not err by finding it was in A.D.'s and M.D.'s best interest to grant permanent custody to CCDJFS, thereby satisfying the first part of that two-part test. This is because, just as the juvenile court found, Mother "has not been economically stable for the life of the case," Mother "was basically homeless for much of the case," and, despite Mother "testing positive for amphetamines and methamphetamine several months before trial, she does not believe that she needs drug treatment." This is in addition to the juvenile court finding, as noted above, the following:

> Mother does not dispute that stability would be hard for her. Due to her childhood, she has little experience with it and does not really know what stability looks like. In sum, the case plan elements were designed to help Mother achieve economic and emotional stability. Mother has not achieved those goals.

{¶ 25} Given the above findings, which we note are all supported by clear and convincing evidence in the record, the juvenile court's decision granting permanent custody of A.D. and M.D. was not error, plain or otherwise. The juvenile court, therefore, did not err by granting CCDJFS' motion for permanent custody of A.D. or M.D. in Case Nos. 2019 JC 05200 and 2019 JC 05201. In so holding, we note that the only contrary evidence came from Mother herself, whom the juvenile court found not "particularly credible" given that "she did not answer questions directly" and instead "tended to ramble on with matters that were unrelated to the questions asked." We defer to the juvenile court on matters of credibility, something that is "crucial in these types of cases since the parties' demeanor and attitude does not translate well to the written record." *In re S.M.*, 12th Dist. Warren Nos. CA2018-08-088 thru CA2018-08-097, 2019-Ohio-198, ¶ 38.

{¶ 26} That said, although we find the juvenile court did not err by granting CCDJFS' motions for permanent custody of A.D. and M.D., the same cannot be said for the trial court's decision granting CCDJFS' request for permanent custody of T.M.-E. This is because, as noted above, while the juvenile court properly applied the two-part test set forth under R.C. 2151.414(B)(1) when ruling on CCDJFS' motions for permanent custody of A.D. and M.D. in Case Nos. 2019 JC 05200 and 2019 JC 5201, the juvenile court incorrectly applied that same two-part test to CCDJFS' request for permanent custody of T.M.-E. in Case No. 2021 JC 05409. Simply stated, rather than the two-part test set forth in R.C. 2151.414(B)(1) that applied to A.D.'s and M.D.'s cases, it is the two-pronged test set forth in R.C. 2151.353(A)(4) that applies to T.M.-E.'s case.

{¶ 27} This is not the first time that a juvenile court, or the state, has made this mistake. *See In re C.S.*, 2018-Ohio-4786 at ¶ 20, fn. 1 (noting that both parties, as well as the juvenile court, all applied the "wrong statutory framework" set forth under R.C. 2151.414[B][1] instead of R.C. 2151.353[A][4] when ruling on a public children service agency's request for permanent custody); *see also In re A.A.*, 2016-Ohio-2992 at ¶ 9, fn. 1; and *In re T.K.K.*, 2012-Ohio-3203 at ¶ 23, fn. 1. But, given the juvenile court's factual findings in this case, we cannot say the juvenile court's mistake can be overlooked in the case at bar. Therefore, under the facts and circumstances of this case, we find the juvenile court committed plain error in its decision granting permanent custody of T.M.-E to CCDJFS when it incorrectly applied the two-part test set forth in R.C. 2151.414(B)(1) rather than the appropriate two-prong test set forth in R.C. 2151.353(A)(4). Accordingly, we reverse the juvenile court's decision solely on that basis and remand this matter to the juvenile court "with instructions to the juvenile court to undergo the analysis required by R.C. 2151.353(A)(4) and to properly consider the relevant factors under R.C. 2151.414(E)." *In re J.H.*, 1st Dist. Hamilton No. C-210277, 2021-Ohio-2922, ¶ 57.

**Conclusion**

{¶ 28} For the reasons outlined above, Mother's single assignment of error related to the juvenile court's decisions granting permanent custody of A.D. and M.D. to CCDJFS lack merit and are overruled. Mother's single assignment of error related to the juvenile court's decision granting permanent custody of T.M.-E. to CCDJFS is sustained. That is to say, the juvenile court's decisions granting CCDJFS' motion for permanent custody of A.D. or M.D. in Case Nos. 2019 JC 05200 and 2019 JC 05201 are affirmed, while the juvenile court's decision granting CCDJFS' request for permanent custody of T.M.-E. in Case No. 2021 JC 05409 is reversed and remanded for further proceedings consistent with this opinion.

{¶ 29} Judgments in Case Nos. 2019 JC 05200 and 2019 JC 05201 are affirmed and judgment in Case No. 2021 JC 05409 is reversed and remanded.

PIPER, P.J., and BYRNE, J., concur.