[Cite as *In re S.S.*, 2023-Ohio-2916.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| IN RE: | : | CASE NO. CA2023-04-020 |
| S.S. | : | O P I N I O N<br>8/21/2023 |
| | : | |
| | : | |
| | : | |
| | : | |

APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. 2021-JC-05446

Denise S. Barone, for appellant.

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

Vivian L. Martin, for child

Beth Bullock, for CASA/GAL

**M. POWELL, J.**

{¶ 1} Appellant ("Mother") appeals a decision of the Clermont County Court of Common Pleas, Juvenile Division, granting permanent custody of her teenage daughter Sylvia to appellee, Clermont County Department of Job and Family Services, Children's

Division (the "Agency").[1]

**{¶ 2}** Sylvia was born in June 2009. Her father died of a drug overdose in 2014. On December 28, 2021, the Agency filed a complaint in the juvenile court alleging that Sylvia was a neglected child. The complaint alleged that when Mother was in prison in 2019 on drug related charges, she asked her then boyfriend to be Sylvia's guardian. Upon her release from prison, Mother dropped Sylvia off at a couple's home in June 2021, subsequently took little to no responsibility for the child, and provided no financial assistance despite receiving social security death benefits on behalf of Sylvia as a result of Sylvia's father's death. Caring for Sylvia became too difficult for the couple and the Agency became involved. The Agency requested that the juvenile court place Sylvia in its temporary custody. The court granted the Agency temporary custody of Sylvia who was then placed with a paternal aunt. The juvenile court appointed a guardian ad litem ("GAL") for the child.

**{¶ 3}** The Agency filed a case plan for reunification. The case plan required Mother to complete a substance abuse assessment and substance abuse treatment program and obtain stable housing and employment. Sylvia was adjudicated dependent on January 12, 2022, and placed in the temporary custody of the Agency as disposition on February 17, 2022.

**{¶ 4}** In February 2022, Sylvia was removed from her aunt's care because the aunt was unable to meet Sylvia's needs. Subsequently, Sylvia was moved to four different foster homes through no fault of hers. In July 2022, Sylvia was placed in a new foster home. She ran away from that home on August 28, 2022. Two days later, the police located Sylvia at a gas station, scared and alone; she was placed in juvenile detention. She remained there until September 27, 2022, when she was placed in the Midwestern Group Home. She ran

---

1. "Sylvia" is a pseudonym, adopted in the opinion for purposes of privacy and readability.

away from the group home on October 10, 2022, but was returned a few hours later. Since her return to the group home, Sylvia is reportedly doing very well and has grown and matured a lot.

{¶ 5} On November 29, 2022, the Agency moved for permanent custody of Sylvia, alleging she had been abandoned by Mother and could not or should not be placed with Mother within a reasonable time. A hearing on the motion was held before a magistrate on January 20, 2023. Mother did not attend the hearing. The magistrate heard testimony from a caseworker of the Agency, the GAL, an adoption supervisor for the Agency, and a staff attorney with the Clermont County Child Support Enforcement Agency. The staff attorney testified that effective May 17, 2022, Mother was ordered to pay child support; Mother never made a payment.

{¶ 6} The caseworker's testimony revealed that Mother was never gainfully employed, may have used the social security death benefits to purchase drugs in the past, and never had stable housing, instead "couch surfing" at friends' houses. The testimony also showed that Mother did not visit with Sylvia until October 2022 and that subsequent visits were inconsistent and sporadic. Despite multiple occasions for Mother to check into a substance abuse treatment center, thanks in large part to the GAL's diligent efforts, Mother checked into a treatment center only once, only to leave within 24 hours. Regarding Sylvia, the caseworker and the GAL both testified that the current group home placement had provided the structure, stability, and consistency Sylvia needs to grow and heal in a healthy environment, and that Sylvia had come a long way and was doing really well. The caseworker testified that Sylvia worries more about Mother than about herself and is sad Mother has not done anything to reunify with her. While Sylvia indicated she would like to stay in contact with Mother, what she really wanted was to be adopted by a family who will love and take care of her. The GAL recommended that permanent custody of Sylvia be

granted to the Agency. The adoption supervisor testified that she has been successful in locating adoptive placements for teenagers; she was confident the Agency could find an adoptive placement for Sylvia.

{¶ 7} On January 23, 2023, the magistrate issued a decision granting permanent custody of Sylvia to the Agency. Mother filed objections to the magistrate's decision, asserting, "For reasons that shall be stated once a transcript has been prepared, and for many others that shall become clear at the objections hearing, the Mother is filing her objections[.]" After the transcript of the custody hearing was filed, Mother neither filed supplemental objections nor attended the objections hearing. Mother's attorney asked that Mother be given another opportunity to rehabilitate herself so she could reunite with Sylvia.

{¶ 8} On April 3, 2023, the juvenile court overruled Mother's objections and granted the Agency permanent custody of Sylvia. The juvenile court found that Sylvia could not be placed with Mother within a reasonable time because Mother had failed to complete a substance abuse treatment program, provide a home, and obtain employment, and further found that it was in Sylvia's best interest to grant permanent custody to the Agency.

{¶ 9} Mother now appeals, raising one assignment of error:

{¶ 10} THE TRIAL COURT ERRED TO THE PREJUDICE OF [MOTHER] WHEN IT GRANTED THE STATE'S MOTION FOR PERMANENT CUSTODY.

{¶ 11} Mother argues that the juvenile court erred in granting permanent custody of Sylvia to the Agency. Mother asserts that the decision is not supported by sufficient evidence and that the court erred in finding a grant of permanent custody to the Agency was in Sylvia's best interest.

{¶ 12} "The juvenile rules require written objections to a magistrate's decision." *In re C.D.*, 12th Dist. Clermont No. CA2019-02-014, 2019-Ohio-4911, ¶ 15. Objections to a magistrate's decision must be "specific and state with particularity all grounds for objection."

- 4 -

Juv.R. 40(D)(3)(b)(ii). The failure to file specific objections is treated the same as the failure to file any objections. *In re K.L.F.*, 12th Dist. Butler Nos. CA2020-08-083 and CA2020-08-084, 2021-Ohio-2290, ¶ 9. Juv.R. 40(D)(3)(b)(iv) provides that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b)."

{¶ 13} Although Mother filed objections to the magistrate's decision, she did not specifically object to the magistrate's findings under R.C. 2151.414(B) and did not raise any of the issues she now raises on appeal. Rather, her objection was simply a nondescript statement asserting she was filing objections to the magistrate's decision for reasons that would be disclosed in the future, but never were.[2] Mother has therefore waived all but plain error on appeal.

{¶ 14} Nowhere within Mother's brief does she assert a claim of plain error. This court has previously ruled that unless the appellant argues a claim of plain error, the appellant has waived claimed errors not objected to below. *In re K.S.*, 12th Dist. Butler No. CA2022-09-081, 2023-Ohio-1951, ¶ 34. "Therefore, under normal circumstances, Mother would ordinarily be precluded from challenging the juvenile court's permanent custody decision on appeal." *In re P.E.*, 12th Dist. Clermont No. CA2023-04-021, 2023-Ohio-2438, ¶ 12. Nevertheless, because permanent custody decisions are tantamount to the death penalty in a criminal case, we will consider whether the juvenile court's decision granting permanent custody of Sylvia to the Agency constitutes plain error. *Id.* The plain error doctrine is not favored in civil cases and is only applicable in rare cases where the error

---

2. In its decision overruling Mother's objections, the juvenile court noted Mother's failure to file specific objections as required by Juv.R. 40(D)(3)(b)(ii) and the fact Mother's attorney filed objections without first consulting with Mother because Mother's whereabouts were unknown. The juvenile court reviewed the magistrate's decision to determine whether there was an error of law or other defect evident on its face.

seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *In re K.M.*, 12th Dist. Butler Nos. CA2020-03-031 thru CA2020-03-033, 2020-Ohio-3602, ¶ 22; *In re A.D.*, 12th Dist. Clermont No. CA2021-11-060, 2022-Ohio-736, ¶ 17.

{¶ 15} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Generally, an appellate court's review of a juvenile court's decision granting permanent custody is limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re W.R.*, 12th Dist. Butler No. CA2022-09-091, 2023-Ohio-334, ¶ 24. An appellate court will reverse a juvenile court's finding that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 18.

{¶ 16} Pursuant to R.C. 2151.414(B)(1), a juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re J.H-L.,* 12th Dist. Warren No. CA2020-01-002, 2020-Ohio-3321, ¶ 8. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *Id.* Second, the juvenile court must find that one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) applies. *Id.* at ¶ 9. Only one of these findings must be met to satisfy the second prong of the two-part permanent custody test under R.C. 2151.414. *Id.* This includes a circumstance where the child has been abandoned. R.C. 2151.414(B)((1)(b). This also includes a circumstance where the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C.

- 6 -

2151.414(B)(1)(a). The juvenile court found that Sylvia could not be placed with Mother within a reasonable time. The court declined to find that Mother had abandoned Sylvia.

{¶ 17} On appeal, Mother does not dispute the juvenile court's finding that Sylvia cannot be placed with Mother within a reasonable time because Mother failed to complete a substance abuse treatment program, provide a home, and obtain employment, and we note that there is clear and convincing evidence in the record to support this finding. The only issue, therefore, is whether the juvenile court erred by finding it was in Sylvia's best interest to grant permanent custody to the Agency. *See In re R.D.*, 12th Dist. Clermont Nos. CA2021-05-017 and CA2021-05-018, 2021-Ohio-3780. Mother argues that the juvenile court erred in finding that permanent custody was in Sylvia's best interest where Mother was diligently trying to regain custody of her daughter by enrolling in rehabilitation treatment centers, was making progress on the case plan, and was in frequent contact with Sylvia during the proceedings.

{¶ 18} R.C. 2151.414(D)(1) provides that in determining whether a grant of permanent custody is in a child's best interest, a juvenile court must consider "all relevant factors," including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) thru (11) apply in relation to the parents and child. *In re A.D.*, 2022-Ohio-736 at ¶ 24. In considering these best interest factors, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 19} Upon considering the best interest factors set forth in R.C. 2151.414(D)(1), the juvenile court found that Sylvia did not have a close relationship with Mother and that Mother was eventually removed from the visitation schedule because of her sporadic and inconsistent face-to-face visits. The court found, "The fact that [Sylvia] is more concerned about her Mother than her own self speaks volumes: a relationship fraught with a child's fear for the parent does not serve the child's best interests." The juvenile court next noted Sylvia's expressed desire to be raised by a loving family, the GAL's recommendation in favor of permanent custody, and "[c]onspicuous by its absence[,] any mention by [Sylvia] of returning home" to Mother. The juvenile court noted Sylvia's numerous placements during the pendency of the case and observed that with the exception of Sylvia running away from the group home, the placements were not Sylvia's fault. The court found that the number of placements was therefore not a reliable indicator that Sylvia would not do well in a family setting. The court further noted Sylvia's understanding that "to obtain the loving family she wants, she will need to follow the rules." Finally, the juvenile court found that "Mother's failure to make more than minimal efforts towards reunification shows that she cannot provide a safe, secure and stable environment." Noting the lack of suitable relatives available for placement, the court found that the "only avenue to permanency is adoption" through permanent custody.

{¶ 20} Upon thoroughly reviewing the record, we find there is clear and convincing evidence in the record to support each of the juvenile court's best-interest findings, and thus there is clear and convincing evidence to support the juvenile court's determination that granting permanent custody to the Agency was in Sylvia's best interest. Noncompliance with a case plan is a consideration for the termination of parental rights. *In re N.R.*, 12th Dist. Butler No. CA2007-12-314, 2008-Ohio-1993, ¶ 35. Throughout the pendency of the case and despite multiple opportunities to do so, Mother failed to complete or even pursue

the necessary treatment options for her substance abuse issues and showed herself consistently unable or unwilling to commit to sobriety. Mother also failed to obtain, let alone maintain, stable housing or employment, two core foundations for providing a secure environment to allow a child to grow and prosper. *Id.* Notwithstanding her assertions, Mother failed to complete significant goals of her case plan and took no serious steps to reunify with Sylvia. Sylvia deserves better. "A child's best interests are served by the child being placed in a permanent situation that fosters growth, stability, and security." *In re W.R.*, 2023-Ohio-334 at ¶ 39. As this court has stated previously, a child's life is not an experiment that can be left to chance. *In re R.D.*, 2021-Ohio-3780 at ¶ 39. Returning Sylvia to Mother's care would do just that given Mother's complete lack of progress on her case plan. This is in addition to Sylvia's expressed desire to be adopted rather than be returned to Mother.

**{¶ 21}** We therefore find that the juvenile court did not commit an error, plain or otherwise, in determining that a grant of permanent custody to the Agency was in Sylvia's best interest. Finding no error in the juvenile court's decision, Mother's assignment of error is overruled.

**{¶ 22}** Judgment affirmed.

HENDRICKSON , P.J., and BYRNE, J., concur.