[Cite as *In re A.K.-R.M.*, 2023-Ohio-4172.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| IN RE: | : | |
| A.K.-R.N. | : | CASE NO. CA2023-06-067 |
| | : | O P I N I O N<br>11/20/2023 |
| | : | |
| | : | |
| | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
JUVENILE DIVISION
Case No. JN2021-0176

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Mark W. Raines, for appellant.

David S. Washington, Jr., for mother.

Amy R. Ashcraft, guardian ad litem.

**M. POWELL, J.**

{¶ 1}  Appellant, the biological father of A.K.-R.N., appeals a decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of the child

to Butler County Children Services.

{¶ 2} The agency became involved with A.K.-R.N. in March 2021 when a non-relative family friend filed for legal custody of the child. The agency was asked to investigate, and after a shelter care hearing, temporary custody of the child was granted to the agency. The agency performed a home study of the non-relative caregiver, but it was denied. The agency also asked the child's mother to complete a substance abuse and mental illness assessment. Although the mother completed the initial assessment, she failed to participate in any of the recommended services.

{¶ 3} Based on these facts, on July 8, 2021, the agency filed a complaint alleging A.K.-R.N. was a dependent child. After hearings, the child was adjudicated dependent and temporary custody was granted to the agency.

{¶ 4} A case plan was created for the child's parents, but neither made progress on the plan for reunification. The trial court made findings during the progress of the case that both parents had abandoned the child.

{¶ 5} Early in the case, the paternal grandmother ("Grandmother") was identified as a possible caregiver for the child. A home study was approved, and to acclimate the child to Grandmother's home, the agency discussed a plan with Grandmother to start with two-hour visits, then eight-hour visits, then overnight visits. Grandmother did not follow through consistently on the visitation plan.

{¶ 6} The agency filed a motion for permanent custody of A.K.-R.N. on December 29, 2022. After hearings on the motion, a magistrate recommended granting permanent custody to the agency. The trial court held a hearing on objections that were filed by Father, and on June 1, 2023, overruled the objections and adopted the magistrate's decision granting permanent custody of A.K.-R.N. to the agency.

{¶ 7} Father now appeals this decision and raises one assignment of error for our

- 2 -

review:

{¶ 8} THE TRIAL COURT ERRED WHEN IT GRANTED [THE AGENCY'S] MOTION FOR PERMANENT CUSTODY AS THERE WAS AN APPROPRIATE RELATIVE PLACEMENT THAT WAS A LESS RESTRICTIVE ALTERNATIVE TO PERMANENT CUSTODY.

{¶ 9} Before a natural parent's constitutionally protected liberty interest in the care and custody of his or her child may be terminated, the state is required to prove by clear and convincing evidence that the statutory standards for permanent custody have been met. *Santosky v. Kramer*, 455 U.S. 745, 759, 102 S.Ct. 1388 (1982). Generally, an appellate court's review of a juvenile court's decision granting permanent custody is limited to considering whether sufficient credible evidence exists to support the juvenile court's determination. *In re W.R.*, 12th Dist. Butler No. CA2022-09-091, 2023-Ohio-334, ¶ 24. An appellate court will reverse a juvenile court's finding that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. *In re T.P.*, 12th Dist. Butler No. CA2015-08-164, 2016-Ohio-72, ¶ 18.

{¶ 10} Pursuant to R.C. 2151.414(B)(1), a juvenile court may terminate parental rights and award permanent custody of a child to a children services agency if the court makes findings pursuant to a two-part test. *In re J.L-H*, 12th Dist. Warren No. CA2020-01-002, 2020-Ohio-3321, ¶ 8. First, the juvenile court must find that the grant of permanent custody to the agency is in the best interest of the child, utilizing, in part, the factors of R.C. 2151.414(D). *Id.* Second, the juvenile court must find that one of the circumstances set forth in R.C. 2151.414(B)(1)(a) to (e) applies. *Id.* at ¶ 9. Only one of the statutory findings must be met to satisfy the second prong of the two-part permanent custody test under R.C. 2151.414. *Id.*

{¶ 11} With regard to the second part of the test, the trial court determined that the

child had been abandoned pursuant to R.C. 2151.414(B)(1)(b) and that finding is not challenged on appeal. Instead, Father argues that permanent custody was not in the child's best interest because there was an appropriate relative placement which was a less restrictive alternative than permanent custody. He contends that the court should have denied the motion and transitioned the child into Grandmother's care.

{¶ 12} R.C. 2151.414(D)(1) provides that in determining whether a grant of permanent custody is in a child's best interest, a juvenile court must consider "all relevant factors," including, but not limited to: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any of the factors listed in R.C. 2151.414(E)(7) thru (11) apply in relation to the parents and child. *In re A.D.*, 12th Dist. Clermont No. CA2021-11-060, 2022-Ohio-736, ¶ 24. In considering these best interest factors, "[t]here is not one element that is given greater weight than the others pursuant to the statute." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, ¶ 56.

{¶ 13} It should be noted that with relation to the best interest factors, Father does not dispute the trial court's determination that the child could not be placed with him or with the child's mother. Instead, he only argues that the child could have been placed with a relative. Father contends that the child has a relationship with Grandmother and there were other family members who testified at the hearing that they were willing to take custody of the child. He further argues that although the child was in the custody of the agency throughout the case, the agency should have transitioned the child to Grandmother's

- 4 -

custody and the agency was not reasonable when visitation problems arose. Finally, Father argues that the child's need for a legally secure placement can be achieved without a grant of permanent custody because Grandmother was a viable alternative.

{¶ 14} We begin by addressing Father's argument that the agency was required to place the child with a suitable family member pursuant to R.C. 2151.412(H)(2). This section provides general priorities in the agency's development and court's review of a case plan, and states that if the parents are not options for custody, "the child should be placed in the legal custody of a suitable member of the child's extended family." However, by its plain language, this provision applies to the agency's duties in preparing a case plan, not permanent custody hearings. *In re C.T.*, 8th Dist. Cuyahoga No. 11030, 2021-Ohio-2274.

{¶ 15} Moreover, our review of the record reveals that the agency identified Grandmother as an alternative to foster care early in the case and prepared a plan to transition the child into Grandmother's care. The plan involved a series of continuous visits that increased in length, progressing to overnight visits, followed by a transfer of custody to Grandmother. The caseworker testified that the reason for the schedule was for the child to get to know her grandmother and Grandmother understood what was asked of her regarding the visitation schedule.

{¶ 16} However, the record shows that Grandmother failed to actively and continually work toward this transition in custody. Although Father argues that the failure of the visits to occur regularly was the fault of the agency and foster parents, the record shows that the agency had to encourage grandmother at several points in the case to schedule visits, and the foster parents reported that Grandmother was failing to follow through in scheduling visitations. When Grandmother told the agency that the foster parents were responsible for the problems in scheduling visitations, the agency instructed Grandmother to contact them if there were problems, but Grandmother failed to do so.

{¶ 17} In addition, the agency had concerns regarding whether Grandmother truly wanted custody, or just wanted to visit with the child. Early in the case, the agency spoke to Grandmother and discussed the need for the child to be placed with her sooner, rather than later, because the longer the child was with foster parents, the more bonded she would become with them. The agency also invited Grandmother to participate in a review hearing so they could discuss her intentions toward gaining custody of the child, but Grandmother failed to appear at the hearing.

{¶ 18} Finally, although Father argues a legally secure placement can be achieved without a grant of permanent custody to the agency because Grandmother is a suitable alternative, Grandmother failed to file a motion for custody prior to the permanent custody hearing. R.C. 2151.414(D)(1)(d) provides that a court may grant legal custody of a child to a person who has filed a motion prior to the hearing. As this court has previously stated, "it is well-settled that a nonparent who seeks legal custody of a child must file a motion for legal custody pursuant to R.C. 2151.353(A)(3)." *In re K.F.*, 12th Dist. Clermont Nos. CA2020-10-061 and CA2020-10-062, 2021-Ohio-1183, ¶ 74. A trial court cannot grant legal custody unless a motion has been filed before the hearing. See *In re L.R.T.*, 165 Ohio App.3d 77, 2006-Ohio-207 (12th Dist.).

{¶ 19} In this case, the court held a review hearing on January 3, 2023, over two months prior to the permanent custody hearing. Grandmother attended this hearing. The court discussed the issue of placing the child with Grandmother and in no uncertain terms, informed Grandmother that she needed to file a motion for legal custody prior to the hearing in order to be considered as a placement option for the child. The court stressed the importance of filing a motion and suggested that Grandmother seek legal counsel. However, despite this admonition, Grandmother failed to file a motion for custody. At the permanent custody hearing, Grandmother initially said she did not know she needed to file

a motion, but on further questioning, admitted that the court had informed her of the necessity of filing a motion.

{¶ 20} Finally, despite Father's argument to the contrary, the court did not err in determining that a legally secure placement could not occur without a grant of permanent custody. As mentioned above, R.C. 2151.414(D)(1)(d) requires the court to consider "the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." As discussed, because Grandmother did not file a motion, granting legal custody to her was not an option. Moreover, the record shows that Grandmother allowed Father to visit the child during some of the visitations, contrary to the court's order.

{¶ 21} In addition, while Grandmother stated she was willing to take custody, her commitment to obtaining legal custody was questioned by the agency, and the record reveals a lack of commitment in her failure to follow through on a simple visitation schedule that would have allowed her to take temporary custody of the child at an early stage in the case. Although Father argues that the court could have denied permanent custody and transitioned the child into Grandmother's care after the hearing, the court did not err in this regard given Grandmother's lack of commitment and failure to follow through. With regard to Father's arguments concerning the two relatives he contends were alternatives to permanent custody, these two people failed to express their interest in obtaining custody of the child until commencement of the permanent custody hearing, and neither filed a motion for custody. Thus, neither was a viable option at the time of the hearing.

{¶ 22} On the other hand, the evidence at the hearing established that the child was bonded to the foster parents. These foster parents had custody of the child from the beginning of the case when the child was a little over a year old. At the time of the hearing, the child was over three years old and was thriving in the foster home. The foster parents

- 7 -

indicated a desire to adopt the child if such was an option and evidenced a commitment to the child throughout the case. In addition, the guardian ad litem recommended granting permanent custody to the agency.

**{¶ 23}** Given our review of the record, we find that the trial court did not err in granting permanent custody of the child to the agency. Father's assignment of error is overruled.

**{¶ 24}** Judgment affirmed.

HENDRICKSON, P.J., and PIPER, J., concur.